**Monica FURLONG, M.D.,
Plaintiff-Appellant,**

v.

**The LONG ISLAND COLLEGE HOSPITAL, et al., Defendants-Appellees.**

**No. 614, Docket 82–7565.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 15, 1982.

Decided June 14, 1983.

---

Harold M. Weiner, New York City (Sandra M. Goodman, New York City, on the brief), for plaintiff-appellant.

Robert Lang, New York City (Edward N. Meyer, David W. Shapiro, Cole & Deitz, New York City, on the brief), for defendant-appellee Long Island College Hosp.

Diana L. Nicholson, Brooklyn (Corner, Finn, Nicholson & Charles, Brooklyn, on the brief), for defendants-appellees Owre and Long Island Anesthesiology Associates, P.C.

Before FEINBERG, Chief Judge, and TIMBERS and NEWMAN, Circuit Judges.

NEWMAN, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Eastern District of New York (Charles P. Sifton, Judge) entered upon an order dismissing, with leave to amend, a Sherman Act complaint for failure to allege adequately the required connection to interstate commerce. Though we do not agree with all of the

District Court's analysis of the relevant standards for assessing the sufficiency of an allegation of interstate commerce effects, we agree that the complaint, in its present form, was properly dismissed.

## I.

The following facts were alleged in the complaint and subsequently filed affidavits. Plaintiff-appellant Monica Furlong is a licensed physician and surgeon and a National Board certified anesthesiologist. Dr. Furlong began work at the Long Island College Hospital (LICH) in 1968. In 1974, Dr. Stewart Owre, chief of the Department of Anesthesiology at LICH, appointed Dr. Furlong to the position of Assistant Director of Anesthesiology. By 1977, appellant had become a fully privileged staff member of LICH with senior privileges in anesthesiology.

In May 1978, Dr. Owre established a professional corporation, Long Island Anesthesiology Associates (LIAA). Although the other anesthesiologists associated with LICH joined LIAA, Dr. Furlong was not asked to become a member. On May 10, 1978, LIAA executed a contract with LICH, which granted LIAA the exclusive right to provide anesthesiological services to LICH, and which obliged LIAA to provide such services on a 24-hour, seven-days-per-week basis.

Notwithstanding the exclusivity provision of its contract with LIAA, LICH did not dismiss Dr. Furlong from her staff position. Dr. Owre, however, deprived Dr. Furlong of certain economic benefits that she had consistently received prior to the formation of LIAA. In addition, Dr. Owre removed Dr. Furlong from her position as Assistant Director of Anesthesiology and sought to prevent her assignment to surgical cases.

On April 15, 1979, Dr. Furlong requested and received a leave of absence from LICH. Some time during her leave, Dr. Furlong

found alternative employment as an anesthesiologist. On August 14, 1981, Dr. Furlong instituted this action, alleging, among other things, that LICH, LIAA, and Dr. Owre acted together to restrain trade and fix prices in violation of section 1 of the Sherman Act, 15 U.S.C. § 1 (1976).

To establish that her claim was cognizable under federal antitrust law, Dr. Furlong alleged several connections between the parties' business activities and interstate commerce. The connections specified were Dr. Furlong's receipt of third-party payments from out-of-state, LIAA's receipt of such payments, LIAA's practice of purchasing goods and services in interstate commerce, and LICH's receipt of federal subsidies. It was not alleged that any of these connections to interstate commerce were or would be affected by the claimed antitrust violation.

Defendants filed motions to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to allege adequately the effect on interstate commerce required to permit application of the Sherman Act. In the supporting affidavits, defendants asserted that neither the amount of out-of-state payments received nor the amount of goods and services purchased had been or would be altered by their alleged conduct.

On June 16, 1982, the District Court filed a memorandum opinion and order dismissing the claim.[1] In its opinion, the Court held that " '[a]s a matter of logic,' the extent of defendants' activities in interstate commerce, in and of itself, 'is irrelevant in a denial of hospital staff privileges ... [since] their denial of staff privileges to [plaintiff] has no possible effect on their own activities in interstate commerce; the only potential effect relates to plaintiff['s] practice of medicine,' " quoting *Cardio-Medical Associates, Ltd. v. Crozer-Chester Medical Center*, 536 F.Supp. 1065 (E.D.Pa. 1982). Focusing solely on plaintiff's profes-

---

1. The District Court assessed only the sufficiency of the complaint and did not render an adverse summary judgment, even though the submission of affidavits might have permitted the defendants' motion to dismiss to be treated as a motion for summary judgment. *See* Fed. R.Civ.P. 12(c). This testing of the complaint alone, a course that inured to the plaintiff's advantage, since the dismissal was with leave to amend, was proper.

sional activities, Judge Sifton concluded that plaintiff's receipt of third-party payments from out of state did not provide a cognizable relation to interstate commerce within the scope of the Sherman Act.[2] He therefore dismissed the complaint "without prejudice to the filing of an amended complaint that would state a claim within the Court's jurisdiction." Declining the District Court's invitation to amend, plaintiff appealed from the judgment entered upon the order of dismissal.

## II.

The interstate commerce component of an antitrust cause of action may be established in two ways. First, plaintiff may allege and prove that defendant's conduct is "within" the stream of interstate commerce. *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975). Alternatively, plaintiff may allege and prove that defendant's conduct, although entirely local or confined to one state, nonetheless "affects" interstate commerce. *United States v. Employing Plasterers Association,* 347 U.S. 186, 189, 74 S.Ct. 452, 454, 98 L.Ed. 618 (1954). Both sides in this case agree that the complaint seeks to plead antitrust jurisdiction under the "affecting commerce" approach. What divides the parties on the substantive aspect of the commerce issue is a dispute concerning the scope of business activities relevant in determining the requisite relationship to interstate commerce. This dispute concerns two issues: (1) whether, in any antitrust case, a court may examine all of the business activities of a defendant or only the defendant's activities affected by the conduct alleged to be unlawful; (2) whether, in a case like Dr. Furlong's, involving a doctor's alleged loss of hospital staff privileges, a court may examine the relevant activities

of either party or only those of the plaintiff.

The first dispute requires consideration of the Supreme Court's decision in *McLain v. Real Estate Board,* 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980), which sustained the jurisdictional allegations of a complaint by real estate buyers and sellers accusing New Orleans real estate brokers of conspiring to fix commission rates. The Court ruled that the plaintiffs need demonstrate a substantial effect on interstate commerce resulting only from defendants' "brokerage activity," not from the "alleged conspiracy to fix commission rates." *Id.* at 242, 100 S.Ct. at 509. The Ninth Circuit has extracted from *McLain* a general rule that the requisite impact on interstate commerce may be established by any of a defendant's business activities "independent of the violations." *Western Waste Service Systems v. Universal Waste Control,* 616 F.2d 1094, 1097 (9th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980).[3] However, the First and Tenth Circuits have read *McLain* more narrowly to mean that an antitrust plaintiff must show an effect upon interstate commerce resulting from defendant's unlawful conduct, either an effect that has already occurred or is likely to occur. *Cordova & Simonpietri Insurance Agency v. Chase Manhattan Bank,* 649 F.2d 36, 45 (1st Cir.1981); *Crane v. Intermountain Health Care, Inc.,* 637 F.2d 715, 719, 722 (10th Cir.1981) (en banc). At first glance, this narrower approach seems inconsistent with the language in *McLain* that explicitly rejected a requirement that the plaintiffs must show an effect on commerce caused by the alleged price-fixing or other activity alleged to be unlawful. 444 U.S. at 242–43, 100 S.Ct. at 509. However, as Judge Breyer's opinion for the First Circuit in *Cordova* indicates, the narrower view

---

**2.** The District Court also concluded that, if the complaint was endeavoring to allege jurisdiction based on the interstate movement of plaintiff's patients, this basis was legally insufficient. On appeal, plaintiff does not claim that her complaint should be understood as making such an allegation, and we therefore do not consider it.

**3.** Though *Western Waste* announced a broad rule focusing on defendant's activities "independent of the violation," 616 F.2d at 1097, Judge Kennedy's opinion was careful to detail numerous respects in which the alleged illegality could be expected to affect interstate commerce. *Id.* at 1097–99.

does not require an explicit showing of a causal link between the unlawful conduct and interstate commerce; instead, it requires only sufficient facts to support an inference that the unlawful conduct has affected or is likely to affect commerce, and in drawing this inference a court will focus upon the link between the defendant's activities "'infected'" by illegality, 649 F.2d at 45 (quoting *McLain, supra,* 444 U.S. at 246, 100 S.Ct. at 511), and interstate commerce.

We agree with the First and Tenth Circuits that it would not be prudent to extract from *McLain* a generalized rule that antitrust jurisdiction can be established simply by showing that some aspects of a defendant's business have a relationship to interstate commerce. Rather the inquiry must be whether the defendant's activity that has allegedly been "infected" by unlawful conduct can be shown "'as a matter of practical economics' to have a not insubstantial effect on the interstate commerce involved." *McLain, supra,* 444 U.S. at 246, 100 S.Ct. at 511, quoting *Hospital Building Co. v. Rex Hospital Trustees,* 425 U.S. 738, 745, 96 S.Ct. 1848, 1852, 48 L.Ed.2d 338 (1976). The requisite showing will vary with the type of unlawful conduct alleged. With a price-fixing allegation, as in *McLain,* the link between the "infected" activities and an ultimate effect on commerce was easily posited, since price-fixing is generally recognized as tending to restrict output, and the complaint adequately alleged interstate activities—real estate financing and title insurance—that would be adversely affected if the local brokerage activities of the defendants were diminished. In prior cases, the Court has spelled out in more detail the causal chain by which the alleged illegality could be expected to affect the relevant lines of commerce. *Burke v. Ford,* 389 U.S. 320, 88 S.Ct. 443, 19 L.Ed.2d 554 (1967); *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.,* 334 U.S. 219, 235–44, 68 S.Ct. 996, 1005–1010, 92 L.Ed.

1328 (1948). We therefore conclude that a plaintiff must allege sufficient facts concerning the alleged violation and its likely effect on interstate commerce to support an inference that the defendants' activities infected by illegality either have had or can reasonably be expected to have a not insubstantial effect on commerce.

The second substantive issue is whether in a case like the pending one the requisite relationship with commerce may be based on the activities of both plaintiff and defendants, or only, as the District Court ruled, on those of the plaintiff. On this issue, we think the District Court too readily put aside any consideration of the defendants' activities.[4] Judge Sifton adopted the view, expressed in *Cardio-Medical Associates, supra,* that in a case involving a hospital's denial of staff privileges, the alleged violation can never affect the hospital's receipt of goods and services. However, this view ignores the rationale behind the Sherman Act's condemnation of such anti-competitive schemes as price-fixing and group boycotting. Such schemes are prohibited because they permit those who perpetrate them to constrict supply, raise prices, and lower output. If output decreases, a defendant's demand for the goods and services it uses will also decrease. Thus, as a matter of substantive antitrust law, there is no defect in a complaint that alleges that a denial of staff privileges, undertaken in furtherance of a price-fixing or group boycotting scheme, may ultimately affect certain of the activities that connect a hospital to interstate commerce.

With these substantive principles in mind, we now consider whether the complaint adequately alleged the requisite jurisdictional element of an antitrust claim. We are mindful of *McLain's* caution that the plaintiffs there were not required to make a "particularized showing" of an effect on interstate commerce in order to

---

4. It is possible that Judge Sifton was rejecting consideration of defendants' activities not as a matter of substantive law, but only as a matter of procedure for lack of an adequate pleading; if the latter is the case, we are in agreement with him, as our subsequent discussion will reveal.

survive a motion to dismiss, but we also must assume that the Court was willing to accept a somewhat general allegation because the causal connection to identified lines of commerce from activities subject to restriction by reason of price-fixing was so readily inferable. That is not the situation with Dr. Furlong's complaint. Though her complaint mentions "price-fixing" in a caption to her antitrust cause of action, she has not alleged the classic agreement between competitors that concerned the Court in *McLain.* There is no claim that competing hospitals or associations of anesthesiologists have conspired to fix the prices for their services. In fact, there is no allegation of price-fixing in any of the operative language of the complaint. Though we do not doubt that a price-fixing conspiracy or a group boycotting scheme can be shown "as a matter of practical economics" to have an adverse effect on the perpetrator's interstate activities, this complaint fails to set forth any facts from which it is inferable that the defendants' activities, infected with the particular illegality alleged, are likely to have a substantial effect on commerce. That omission is not surprising, since it is not easy to imagine how the exclusion of Dr. Furlong from LIAA and the various harassments alleged to have prompted her withdrawal from the LICH medical staff might be shown to have a predictable tendency to restrict the defendants' purchase of supplies from out of state. Though we do not agree with Judge Sifton that defendants' activities are irrelevant as a matter of logic, we do agree that the complaint in its present form fails to set forth facts from which the jurisdictional element, based on defendants' activities, is inferable.

■ Whether the jurisdictional element was adequately pleaded with respect to plaintiff's own activities is a closer question.

Plaintiff alleged that as a result of defendants' conduct she lost $120,000 of income and that she derives a "substantial portion" of her income from third-party payments by out-of-state insurers.[5] In *Rex Hospital* the Supreme Court included an antitrust plaintiff's loss of revenue from out-of-state insurers among a "combination of factors" that sufficed as an adequate pleading of a substantial effect on commerce where the revenue loss, plus diminished out-of-state purchases, totaled "thousands and perhaps hundreds of thousands of dollars." 425 U.S. at 744, 96 S.Ct. at 1852. However, out-of-state insurance payments alone have been held inadequate to establish the jurisdictional element when they constituted only ¼ of one percent of a plaintiff's income. *Hahn v. Oregon Physicians' Service,* 508 F.Supp. 970, 977 (D.Ore.1981), *rev'd on other grounds,* 689 F.2d 840 (9th Cir.1982).

We are mindful of the generous approach to pleading outlined in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), which has been applied in the antitrust context. *McLain, supra,* 444 U.S. at 246, 100 S.Ct. at 511. However, we think that *Conley* permits a pleader to enjoy all favorable inferences from facts that have been pleaded, and does not permit conclusory statements to substitute for minimally sufficient factual allegations. Antitrust suits like Dr. Furlong's, which are at best at the very margin of the Sherman Act's coverage, ought not to be initiated without some specificity concerning the jurisdictional facts readily within the plaintiff's knowledge. Moreover, while *Conley* cautions against hastily denying a plaintiff access to a court, it does not impair a district court's authority to dismiss with leave to amend a complaint of borderline jurisdictional sufficiency so that more refined allegations may be formulated and then definitively assessed for legal adequacy. Finally,

---

**5.** In her brief Dr. Furlong alleges that she is prepared to prove that defendants' conduct affected interstate commerce by diminishing her purchase of out-of-state equipment and supplies. However, the complaint contains no allegation to this effect, much less an adequate claim of an amount of diminished out-of-state purchases that could be evaluated by the District Court against the standard of a "not insubstantial" effect on commerce. Plaintiff's opportunity to amend her complaint will enable her to plead such an allegation if it can be made in good faith.

a more detailed pleading requirement in such cases obliges a plaintiff to give some thought to the theory of his case, thought that may well reveal to him that he does not, after all, have a case worth pursuing in a federal jurisdiction; it also obliges his attorney to reckon with the "good ground" standard of Fed.R.Civ.P. 11 when he endeavors to plead factual allegations.

Though we are not prepared to say that a diminution of a doctor's out-of-state payments cannot satisfy the jurisdictional element of an antitrust claim, we think Dr. Furlong should be more specific as to the jurisdictional facts of her claim before a district court can be asked to rule whether her claim involves a not insubstantial effect on commerce.

For these reasons, the judgment dismissing the complaint without prejudice is affirmed.