**NURSE MIDWIFERY ASSOCIATES; Susan Sizemore; Victoria Henderson; Darrell Martin, M.D.; Richard and Margaret Carpenter; and Joyce Holt**

v.

**B.K. HIBBETT, M.D.; E. Conrad Chackleford, M.D.; George Andrews, M.D.; Stephen Melkin, M.D.; Harry Baer, M.D.; Southern Hills Hospital; Hendersonville Community Hospital; State Volunteer Mutual Insurance Company, Inc.; and Vanderbilt University Hospital.**

No. 82–3208.

United States District Court,
M.D. Tennessee,
Nashville Division.

Dec. 9, 1983.

Powers, Venick & Lyle, Nashville, Tenn., for plaintiffs.

Ward DeWitt, Jr., Nashville, Tenn., for B.K. Hibbett, III.

Gullett, Sanford & Robinson, Nashville, Tenn., for State Volunteer Mut. Ins. Co.

Waller, Lansden, Dortch & Davis, Nashville, Tenn., Joe Sims, Kevin D. McDonald, Washington, D.C., and Charles L. Kown, Nashville, Tenn., for Southern Hills Hosp. and Hendersonville Community Hosp.

Bass, Berry & Sims, Nashville, Tenn., and Sara E. Sedwick, for Vanderbilt University Hosp.

Watkins, McGugin, McNeilly & Rowan, Nashville, Tenn., for Drs. George Andrews, Stephen Melkin and Harry Baer.

Boult, Cummings, Conners & Berry, Nashville, Tenn., for Dr. E. Conrad Chackleford.

## MEMORANDUM AND ORDER

JOHN T. NIXON, District Judge.

Pending in this civil antitrust action is the motion of the plaintiffs, Nurse Midwifery Associates, et al (NMA) to compel the defendants Vanderbilt University Hospital (Vanderbilt), Hendersonville Community Hospital (HCH), and Southern Hills Hospital (SHH) to respond to plaintiffs' interrogatories. These interrogatories seek information concerning the sources and amounts of payments defendants received for obstetrical-related services, the amounts of medical supplies and equipment purchased by defendants from vendors with principal offices out-of-state, the amounts of medical supplies and equipment purchased by defendants that were manufactured out-of-state, and the number of out-of-state residents admitted as obstetrical patients during 1978, 1979, and 1980. The defendants have objected to these interrogatories on the grounds of irrelevance and burdensomeness.

With respect to relevance, the plaintiffs contend that the interrogatories are calculated to obtain information that may be used to establish subject matter jurisdiction under the Sherman Antitrust Act. 15 U.S.C. §§ 1, 2. The complaint alleges that these and other defendants violated the antitrust laws by denying privileges and access to their facilities to NMA in furtherance of a conspiracy to prevent the nurse midwives from competing with staff obstetricians. Relying upon the Sixth Circuit's analysis of the Sherman Act's jurisdictional requirement in *Tarleton v. Meharry Medical College*, 717 F.2d 1523 (6th Cir.1983), the plaintiffs have identified in their pleadings and in an affidavit supporting their motion three channels of interstate commerce allegedly affected by the defendants' challenged activity: (1) interstate travel by patients to utilize plaintiff nurse midwives' services at the defendants hospitals; (2) interstate purchase of supplies, pharmaceuticals, and equipment used at the defendant hospitals and arising from the plaintiffs' nurse midwifery practice; and (3) interstate payment for hospital services by third party insurors for patients brought to the defendant hospitals by the plaintiffs. The plaintiffs argue that by means of the requested discovery they

will be able to show that the defendants' alleged activity of conspiring to and engaging in a refusal to deal with the plaintiff midwives has had a substantial effect upon interstate commerce, thus meeting the standard enunciated in *Tarleton.*

■ This Court must agree that, applying *Tarleton* and the liberal federal rules of discovery, the disputed interrogatories are at least calculated to obtain information relevant to establishing subject matter jurisdiction in this case. To satisfy the Sherman Act's jurisdictional requirement, the challenged activity must occur in the flow of interstate commerce, or, though occurring on a purely local level, must substantially affect interstate commerce. *McLain v. Real Estate Board, Inc.,* 444 U.S. 232, 242, 100 S.Ct. 502, 509, 62 L.Ed.2d 441 (1980); *Hospital Bldg. Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). As the plaintiffs contend, the requested discovery could conceivably enable them to show that the alleged denial of access to the hospitals' facilities has had a substantial effect on interstate commerce.

The proper application of the "affecting commerce" test under the Sherman Act has, since the Supreme Court's decision in *McLain,* continued to be a subject of controversy among the circuits. *See McLain,* 444 U.S. at 242–43, 100 S.Ct. at 509. Differing over the meaning of the somewhat ambiguous language of the *McLain* decision, the Ninth Circuit and recently the Eleventh Circuit have adopted a liberal reading, holding that jurisdiction may be predicated on any general business activity of a defendant that substantially affects commerce, while the First, Second and Tenth Circuits have held more narrowly that the alleged illegal activity must substantially affect some channel of commerce. *Compare Construction Aggregate Transport v. Florida Rock Industries,* 710 F.2d 752, 766–67 & n. 30 (11th Cir.1983), *and Western Waste Service v. Universal Waste Control,* 616 F.2d 1094 (9th Cir. 1980), *cert. denied,* 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980), *with Furlong v.*

*Long Island College Hospital,* 710 F.2d 922, 926 (2d Cir.1983); *Cordova & Simonpietri Insurance Agency, Inc. v. Chase Manhattan Bank N.A.,* 649 F.2d 36, 44–45 (1st Cir.1981); *Crane v. Intermountain Health Care, Inc.,* 637 F.2d 715, 720–25 (10th Cir.1980).

This Court in *Tarleton v. Meharry Medical College,* No. 77–3417, slip op. (June 18, 1982), adopted the latter, more conservative reading as the one most consistent with prior decisions on which *McLain* purports to be based. *See McLain,* 444 U.S. at 242–46, 100 S.Ct. at 509–511; *Hospital Bldg.,* 425 U.S. at 742–44, 96 S.Ct. at 1851– 52; *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 783–86, 95 S.Ct. 2004, 2011–12, 44 L.Ed.2d 572 (1975). *See also Crane,* 637 F.2d at 721–24. Although the Sixth Circuit reversed this Court's dismissal of the *Tarleton* complaint, the appellate court did not disturb the ruling that only those of defendant's activities infected by the allegedly unlawful conduct are relevant in determining the requisite relationship to commerce. Rather, the Sixth Circuit again declined to decide whether the broad or narrow reading of *McLain* is correct, holding that even under the narrow test the plaintiff's allegations demonstrated a sufficient effect on interstate commerce. *Tarleton,* 717 F.2d at 1528 n. 2. *See also James R. Snyder Co., Inc. v. Associated General Contractors of America,* 677 F.2d 1111, 1115 n. 3 (6th Cir.1982).

■ Left without further guidance from the Sixth Circuit, this Court continues to take the position that a Sherman Act plaintiff must demonstrate that the alleged illegal conduct, as opposed to the defendant's general business, substantially affects some channel of interstate commerce. With respect to virtually any defendant in the complex, modern business setting there is a likelihood of finding at least some relationship to interstate commerce. Yet, if the Sherman Act's jurisdictional requirement has any meaning, not every allegation of competitive abuse warrants a hearing in federal court. *See* 21 Cong.Rec. 56–57 (Dec. 24, 1980) (Sen. Sherman) (observing

applicability of state remedies); Kintner, *Federal Antitrust Law* § 6.1 at 286 (1980). An allegation that the defendant's general or overall business has an effect on interstate commerce will not serve properly to define Sherman Act jurisdiction. As the Court in *Crane*, 637 F.2d at 723, reasoned:

[E]ven the purely local activity of a completely local business falls within the Act's reach if it appreciably affects a channel of commerce demonstrably interstate in character. "If it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze." *United States v. Women's Sportswear Manufacturers Ass'n*, 336 U.S. 460, 464, 69 S.Ct. 714, 716, 93 L.Ed. 805 (1949). Similarly, ... even though the defendant's overall business may impact interstate commerce greatly, the challenged activity may in every practical sense be unrelated to interstate commerce.

To read *McLain*, instead, as requiring the pleader to allege a nexus between the challenged activity and interstate commerce will enable the court to assess, in practical economic terms, whether the requisite effect on commerce exists rather than leave the court, perhaps erroneously, to presume so. *McLain*, 444 U.S. at 242, 100 S.Ct. at 509; *Crane*, 637 F.2d at 724. Such a reading is, moreover, in conformity with the focus on the challenged activity in prior Supreme Court decisions, such as *Hospital Building*, 425 U.S. at 742–744, 96 S.Ct. at 1851–1852, and *Goldfarb*, 421 U.S. at 783–86, 95 S.Ct. at 2011–12 (emphasizing nexus with challenged conduct even though dealing only with "in commerce," not "effect on commerce", test). *See also Burke v. Ford*, 389 U.S. 320, 88 S.Ct. 443, 19 L.Ed.2d 554 (1967); *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219, 235–44, 68 S.Ct. 996, 1005–1010, 92 L.Ed. 1328 (1948).

In this case, then, the plaintiffs are entitled to an opportunity to establish a sufficient nexus between the challenged activity and interstate commerce so that it can be said "as a matter of practical economics" there is "a not insubstantial effect on the interstate commerce involved." *McLain*, 444 U.S. at 246, 100 S.Ct. at 511. This determination must be made "using a case-by-case analysis of the relevant economic facts." *Heille v. City of St. Paul*, 671 F.2d 1134, 1136 (8th Cir.1982). *See Lease Lights, Inc. v. Public Service Co. of Okla.*, 701 F.2d 794 (10th Cir.1983) (alleged monopolization in supply of illumination had substantial effect on commerce by repeated, ongoing interstate purchases of lights and lighting components); *Mishler v. St. Anthony's Hospital*, 694 F.2d 1225 (10th Cir.1981) (complaint identified three relevant channels of commerce and their relationship to challenged activities of conspiracy to destroy competition and monopolize emergency neurosurgery); *Konik v. Champlain Val. Physicians Hosp. Med. Ctr.*, 561 F.Supp. 700, 709 (N.D.N.Y.1983) (pleadings alleged that challenged denial of use of hospital facilities had substantial effect on a number of channels of interstate commerce).

Here, the plaintiffs have identified three channels of interstate commerce that have allegedly been affected: interstate travel by patients, interstate purchase of medical supplies, and interstate payments by third party insurors. Delineating more specifically the way in which these channels have been affected by the defendants' unlawful conduct, the plaintiffs' affidavit states that there is a different approach to maternity care among nurse midwives as compared with most obstetricians: the plaintiffs' patients generally receive fewer drugs and pharmaceuticals, earlier hospital discharges, and, consequently, lower hospital charges than patients of most obstetricians. The plaintiffs contend, therefore, that had the defendants not engaged in an illegal boycott of the nurse midwives, more out-of-state patients would have been attracted to the defendant hospitals to use the midwifery services, fewer medical supplies, including those supplied from out-of-state, would have been purchased per patient, and payments by out-of-state patients and third party insurors would have been lower.

■ For jurisdictional purposes it is not necessary for the plaintiffs to show the magnitude of the effect on commerce as long as it is shown to have been not insubstantial. *See Goldfarb*, 421 U.S. at 785, 95 S.Ct. at 2012 (because magnitude of effect does not control, lack of "showing that homebuyers were discouraged by the challenged activities does not mean that interstate commerce was not affected"); *Burke v. Ford*, 389 U.S. at 322 & n. 2, 88 S.Ct. at 444 & n. 2 (although unit sales increased during period of illegal activity, statewide market division "inevitably affected interstate commerce"); *Tarleton*, 717 F.2d at 1532 (jurisdiction "does not fail because a plaintiff does not precisely quantify the alleged adverse impact").

Nor are the plaintiffs restricted to examining solely the effect on the plaintiffs' activities in interstate commerce. Notwithstanding the analysis of the district court in *Cardio-Medical Associates, Ltd. v. Crozer-Chester Medical Center*, 536 F.Supp. 1065 (E.D.Pa.1982), it is against logic, the weight of authority and the general concern of the antitrust laws for the protection of competition rather than individual competitors to focus solely on the plaintiffs and foreclose any consideration of independent effects on interstate commerce, including the effect on the defendants' own activities in interstate commerce. Indeed, the Third Circuit has very recently reversed the lower court's dismissal for lack of jurisdiction, declining to adopt the "theory that defendants' conduct is relevant to the jurisdictional inquiry only insofar as it affects interstate commerce through the person of the plaintiff." *Cardio-Medical Associates v. Crozer-Chester Medical Center*, 721 F.2d 68 at 74 (3d Cir.1983).

In *Tarleton*, 717 F.2d at 1351, likewise, the Sixth Circuit examined the effect on the defendants' own activities in interstate commerce, finding the jurisdictional requirement satisfied by an alleged "nexus" between the defendant hospital's allegedly illegal medical practice plan "and the interstate movement of ... patients and medical fees" to the hospital. As expressed by the Second Circuit in *Furlong*, 710 F.2d at 926,

the view that an alleged antitrust violation involving the denial of hospital privileges "can never affect the hospital's receipt of goods and services"

ignores the rationale behind the Sherman Act's condemnation of such anticompetitive schemes as price-fixing and group boycotting. Such schemes are prohibited because they permit those who perpetrate them to constrict supply, raise prices, and lower output. If output decreases, a defendant's demand for the goods and services it uses will also decrease. Thus, as a matter of substantive antitrust law, there is no defect in a complaint that alleges that a denial of staff privileges, undertaken in furtherance of a price-fixing or group boycotting scheme, may ultimately affect certain of the activities that connect a hospital to interstate commerce.

*Accord Konik*, 561 F.Supp. at 711–12. This Court agrees that conceivably a boycott by a group of hospitals and their staff obstetricians may have an impact on their own role in interstate commerce, and that the defendants' conduct may be examined "both as it affects interstate commerce through the person of the plaintiff and as it affects commerce independently." *Cardio-Medical*, 721 F.2d at 75.

The anticompetitive scenario alleged in the instant case, however, does not precisely follow that described by the *Furlong* Court. In this case, it does not appear that plaintiffs are alleging a decrease in output with a concomitant price increase and a decrease in the defendants' demand for goods: plaintiffs claim the alleged boycott has resulted in fewer patients travelling interstate to use midwifery services at the hospitals, and yet the remaining obstetrical patients treated by the defendant obstetricians allegedly receive more pharmaceutical goods and extended hospitalization due to the purported difference between midwifery and obstetrical care, so that the per patient costs are higher. The defendant hospitals and obstetricians may accordingly be demanding just as many goods and payments through interstate

commerce as would have been required had the plaintiffs continued to practice. These allegations raise the question that has been the subject of further debate among the courts: whether a showing of a decrease in the plaintiffs' trade equal to an increase in the defendants', and thus a mere "shift", is sufficient to satisfy the effect on commerce requirement.

■ In *Snyder*, 677 F.2d at 1114–15, the Sixth Circuit held that such a shift is sufficient. In conformity with the Supreme Court's ruling that the plaintiff need not quantify the impact of the defendant's conduct, *McLain*, 444 U.S. at 243, 100 S.Ct. at 510 the *Snyder* Court held that the substantiality of the effect does not depend upon any showing of a change in the net flow of commerce into or out of the state. It was not necessary that the plaintiffs show an effect on the market price of the goods in question, nor a decrease in the flow of goods into the state. It was enough that plaintiffs' purchases of those goods decreased as a result of the defendants' conduct: "the targeted activity (labor) was shown to have been interrelated with a specified aspect of interstate commerce (purchase of out-of-state products), and defendants' conduct was shown to have had a not insubstantial effect on plaintiffs' purchases of those products from interstate commerce." *Snyder*, 677 F.2d at 1115. *Accord, Cardio-Medical*, 721 F.2d at 73 (discussing additional reasons "to draw back from the district court's 'shifting' theory"). In determining jurisdiction, then, this Court will not look to whether the challenged conduct has affected the net volume of interstate trade, but whether as a result of the conduct, transactions have occurred that

> are "substantially" different from the transactions that would otherwise have occurred. There may be differences in the overall number or volume of such transactions, but they may also be differences in the terms of the transactions, or the parties thereto. Such transactions "burden" interstate commerce because they are the result, directly or indirectly,

of conduct that violates federal antitrust policy. They are a burden not on the volume of trade, but on the freedom of trade.

*Cardio-Medical*, 721 F.2d at 74.

■ Pending before this Court is a discovery motion rather than a motion pursuant to FED.R.CIV.P. 12(b), and this Court will not address the sufficiency of the jurisdictional pleading other than to observe that under the liberal federal discovery standards the requested discovery cannot be considered irrelevant as a matter of law for purposes of establishing jurisdiction. "Interferences with the interstate travel of patients, the interstate payment of fees, and the interstate purchase of medication are well-recognized methods of demonstrating an effect on interstate commerce in antitrust litigation." *Cardio-Medical*, 721 F.2d at 76 (citing cases). Defendants argue that the interrogatories propounded by the plaintiffs merely "seek information about defendants' everyday regular business activities in interstate commerce." Mem. of HCH and SHH in Opposition at 6. This Court disagrees. The information plaintiffs seek concerns the defendants' involvement in the allegedly targeted activity, maternity care, and the connection between this local activity and three channels of interstate commerce. To be sure, according to *Snyder*, 677 F.2d at 1115, plaintiffs could simply demonstrate that their own activity in maternity care involved interstate purchases and that these transactions were significantly affected by the defendants' conduct. With such proof, evidence concerning the effect on commerce with respect to defendants' activities in the specified channels could be superfluous. Nevertheless, the plaintiffs are not confined to proving jurisdiction under a theory that focuses on facts that are primarily in their own hands. They may seek to show a substantial difference as well in defendants' own transactions in interstate commerce or independent effects on these channels of commerce. According to the jurisdictional theory put forward by the plaintiffs, information concerning the defendants' admission of patients and receipt

of supplies and payments relating to obstetrical services from out-of-state surrounding the period of the alleged conspiracy could conceivably enable plaintiffs to show that the defendants' activities that were allegedly infected by the conspiracy had the requisite effect on commerce. The requested discovery is therefore relevant.

■■■■ In antitrust cases particularly, "where the proof is largely in the hands of the alleged conspirators," plaintiffs must be given ample opportunity for discovery. *Hospital Bldg.*, 425 U.S. at 746, 96 S.Ct. at 1853 (quoting *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Tarleton*, 717 F.2d at 1529. The plaintiffs' burden in establishing jurisdiction, as stated by the Sixth Circuit in *Tarleton*, is to

> allege in the pleadings the critical relationship between local activity and a channel of interstate commerce, and if these allegations are controverted [the plaintiffs] must proceed to demonstrate by submission of evidence beyond the pleadings that the jurisdictional requirements of the Sherman Act are satisfied.

*Id. See McLain*, 444 U.S. at 246, 100 S.Ct. at 511; *Snyder*, 677 F.2d at 1115 (if allegations concerning interrelationship are controverted, "plaintiffs must then prove that the defendant's conduct had, as a matter of practical economics, a not insubstantial effect on the interrelated activity which was demonstrably in interstate commerce"). Before the plaintiffs are required to meet this burden they should be given the opportunity through discovery of relevant information to adduce the necessary evidence.

■■■ The determination that the requested discovery is relevant does not, however, end the matter. The defendants have presented compelling affidavits in support of their argument that the interrogatories are extremely burdensome, and the plaintiffs have not adequately addressed the problems defendants raise. The defendants argue, for example, that even if the plaintiffs' jurisdictional theory is sound, they do not need to know the precise numbers of patients admitted or amounts of supplies and payments from out-of-state. To the extent that defendants suggest, as stated previously, that plaintiffs are not required to quantify the effect on commerce or show a change in the net flow for jurisdictional purposes, defendants are correct. However, under the plaintiffs' jurisdictional theory some approximation, at least, would appear necessary in order to show that the effect, if any, on three channels of commerce has been "significant". It is nevertheless the Court's opinion that at least as a preliminary phase of such discovery alternative interrogatories could be framed that would make available necessary information in a less burdensome fashion. With respect to defendants SHH and HCH, in order to test the plaintiffs' theory, for example, each of the defendant hospitals might be required to produce the requested information for a distinct one-month period during and after cessation of the plaintiffs' services. If, at a subsequent evidentiary hearing, the plaintiffs were unable to demonstrate a not insubstantial effect on interstate commerce, the Court might sustain defendants' objections to further discovery. *See Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir.1981), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1982). In order to make practicable arrangements for such discovery, the parties will appear for an in chambers conference on December 20, 1983 at 8:30 a.m. The plaintiffs' pending motion to extend the deadline for discovery will also be taken up at that time.