835 F.2d 879
 1987-2 Trade Cases 67,805
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kanamarlap RAO, Plaintiff-Appellant,
v.
PONTIAC GENERAL HOSPITAL, Defendant-Appellee.
 No. 86-2183.
 United States Court of Appeals, Sixth Circuit.
 Dec. 15, 1987.
 
 Before ENGEL and CORNELIA G. KENNEDY, Circuit Judges, and JOHN W. POTTER*, District Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Kanamarlap Rao ("plaintiff") appeals the judgment of the District Court granting the motion of defendant-appellee Pontiac General Hospital ("defendant") to dismiss or for summary judgment in this antitrust action. The plaintiff presents one issue on appeal: whether there is a sufficient nexus between the defendant's activities and interstate commerce to satisfy the jurisdictional requirement of the Sherman Act. For the reasons that follow, we affirm.
 
 
 2
 The defendant, a publicly owned hospital in Pontiac, Michigan, has a neonatology department which provides health care for newborn infants. The defendant allows only neonatologists employed full-time by the defendant to use its neonatology department. The plaintiff, a neonatologist, was employed full-time by the defendant until March, 1985, when he resigned to begin a private practice. He applied for privileges in the defendant's neonatology department in September of 1985, but the defendant refused him because of its rule that only staff neonatologists may use the department. The plaintiff subsequently filed suit against the hospital under section 1 of the Sherman Act, 15 U.S.C. Sec. 1, claiming that the defendant's agreement with its staff neonatologists resulted in a contract in restraint of trade and an illegal tying arrangement. After allowing the defendant to submit interrogatories to the plaintiff and to obtain answers, the District Court granted the defendant's motion to dismiss or for summary judgment on the grounds that the plaintiff had not established jurisdiction under the Sherman Act. Joint Appendix at 93. Plaintiff appealed.
 
 
 3
 Section one of the Sherman Act provides in pertinent part that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States ... is declared to be illegal." 15 U.S.C. Sec. 1 (emphasis added). McLain v. Real Estate Board of New Orleans, Inc., 444 U.S. 232 (1980) stated the standard for determining whether a plaintiff has met the jurisdictional requirement of the Sherman Act. That case involved an allegation that the real estate brokers in New Orleans conspired to fix prices in violation of section 1. The Court stated that in order to allege a claim under the Sherman Act, the plaintiff must establish "either that the defendants' activity is itself in interstate commerce, or, if it is local in nature, that it has an effect on some other appreciable activity demonstrably in interstate commerce." Id. at 242 (emphasis added). To meet the "effect" portion of the standard, it would be sufficient for the plaintiffs "to demonstrate a substantial effect on interstate commerce generated by the respondents' brokerage activity," although they "need not make the more particularized showing of an effect on interstate commerce caused by the alleged conspiracy." Id. Summarizing, the Court stated that the plaintiffs need only show "that [defendants'] activities which allegedly have been infected by a price-fixing conspiracy be shown 'as a matter of practical economics' to have a not insubstantial effect on the interstate commerce involved." Id. at 246 (quoting Hospital Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 745 (1976)). Applying this rule to the facts, the Court found that the plaintiff had alleged that a price fixing conspiracy had infected the defendants' brokerage activities, and that the brokerage activities could affect the volume of residential sales, which in turn could affect the demand for financing and title insurance, two activities that the record showed to be in interstate commerce. Id. Consequently the Court held that the District Court should not have dismissed the plaintiff's complaint.
 
 
 4
 The Circuits have split in interpreting McLain. The Ninth Circuit has held that McLain established that a plaintiff may satisfy the jurisdictional requirement by showing that any of the defendant's activities affect interstate commerce. Western Waste Serv. Sys. v. Universal Waste Control, 616 F.2d 1094, 1097 (9th Cir.), cert. denied, 449 U.S. 869 (1980). The Sixth Circuit, however, has joined the First, Second, Seventh, Eighth and Tenth Circuits in holding that the plaintiff establishes jurisdiction only when it shows that the particular business activity it challenges affects interstate commerce. Stone v. William Beaumont Hosp., 782 F.2d 609, 613-14 (6th Cir.1986).
 
 
 5
 Stone relied heavily on the Second Circuit's decision in Furlong v. Long Island Hospital, 710 F.2d 922 (2d Cir.1983), which had facts somewhat similar to those of the case before this Court. In Furlong a physician sued a hospital, a professional corporation and another physician, alleging that they had violated section one by refusing her staff privileges. The plaintiff alleged several connections between the defendants' business activities and interstate commerce, including the receipt of third-party payments from out-of-state, the defendants' practice of purchasing goods and services in interstate commerce, and the hospital's receipt of federal subsidies. The court held that McLain requires "sufficient facts to support an inference that the unlawful conduct has affected or is likely to affect commerce, and in drawing this inference a court will focus upon the link between the defendant's activities 'infected' by illegality, and interstate commerce." Id. at 926 (citation omitted). On this basis the court found that the plaintiff's complaint failed to "set forth any facts from which it is inferable that the defendants' activities, infected with the particular illegality alleged, are likely to have a substantial effect on commerce." Id. at 927.
 
 
 6
 Similarly, in Stone a physician brought action against a hospital and its staff alleging that they conspired to deny him staff privileges in restraint of trade. He alleged interstate commerce ties similar to those alleged by Furlong 's plaintiff. The Court, citing Furlong, interpreted McLain as requiring that "the allegedly unlawful conduct itself ... be shown to 'infect' those general business activities of the defendant which do, or are likely to, effect [sic] interstate commerce." Id. at 613-14. Applying this standard to the plaintiff's complaint, the Court found that "the gravamen of Stone's complaint was that defendants illegally excluded him from using a local facility two or three times a month. This court cannot ascertain how such a deprivation has any more than a de minimis impact on interstate commerce." Id. at 614.[1]
 
 
 7
 The plaintiff in the case before this Court attempts to distinguish Stone in two ways. First, he argues that while Stone involved the exclusion of only one person, the hospital in this case has excluded all neonatologists from its neonatology department except for those that are on its staff. Second, he points out that Stone did not involve a tying arrangement.
 
 
 8
 In the plaintiff's first amended complaint he alleged the following ties to interstate commerce:
 
 
 9
 3. The business of PONTIAC GENERAL HOSPITAL including neonatology and the activities of each branch thereof are within and directly affect trade and commerce among the several states. In the course of such business there is a constant and continuous stream of trade and commerce between the several states of the United States consisting of purchase, use, distribution and sale of items manufactured, produced and assembled in states other than the State of Michigan.
 
 
 10
 Joint Appendix at 26(a). In response the the defendant's interrogatory asking for the facts that formed the basis of this allegation the plaintiff alleged that:
 
 
 11
 The neonatology unit of Pontiac General Hospital has substantial Federal funding. It obtains its apparatus from different states of the United States and specifically its ventilators are brought in from Indiana and Ohio, its monitors, incubators and warmers are brought in from California. Its neonatology department trains interns from all over the United States and the world including Brazil, Iran, India and Korea. Pontiac General Hospital as an entity trains and employs physicians from all over the country and the world. It also has substantial Federal funding and obtains a large amount of all its inventory from states other than Michigan. Further, it impermissibly excludes from its neonatology division physicians from all over the world and the United States who have been trained in all states of the United States and the world as a result of its employment contract.
 
 
 12
 Joint Appendix at 41. The plaintiff has not met McLain 's jurisdictional requirement because he has failed to show how the act of allowing only staff neonatologists to use the neonatology department "infects" these activities the plaintiff alleges affect interstate commerce. See McLain, 444 U.S. at 242; Stone, 782 F.2d at 613-14. The plaintiff's counsel argued in oral argument that the defendant's neonatology department received three million dollars from out-of-state insurance companies. If this is true, it would be relevant to the question of jurisdiction. However, this allegation is not before this Court. No argument exists that the plaintiff did not put this allegation in its first complaint, its first amended complaint, or its answers to the defendant's interrogatories. The plaintiff argues that the allegation was in oral argument of a motion to file a second amended complaint, which the District Court denied. Tr. at 16. However, the plaintiff does not claim that the District Court abused its discretion in denying the motion. Furthermore, the record before us as well as the record of the District Court do not contain a copy of the proposed second amended complaint. Nowhere in this totally unsatisfactory record is an allegation that the defendant's neonatology unit received three million dollars of out-of-state insurance payments.
 
 
 13
 Accordingly, we AFFIRM the judgment of the District Court.
 
 
 
 *
 The Honorable John W. Potter, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 District Court Judge Holschuh, concurring in the judgment, wrote separately but agreed with Judge Krupansky's analysis of the jurisdictional issue. 782 F.2d at 617-20. Judge Martin concurred in the judgment but wrote that he interpreted McLain as only requiring the plaintiff to show that the defendants' general business activities have a "not insubstantial effect" on interstate commerce. Id. at 621-23. Recently, however, a Sixth Circuit panel unanimously relied on Stone to hold that a plaintiff had failed to show that a defendants' allegedly illegal activities had substantially affected interstate commerce. Sarin v. Samaritan Health Center, 813 F.2d 755 (6th Cir.1987)