**In Re CEDAR HILL CEMETERY LITIGATION.**

**MAGLIONE, et al.**

v.

**CEDAR HILL CEMETERY, et al.**

**No. 93 Civ. 4346.**

United States District Court, S.D. New York.

May 10, 1994.

---

Sirota & Sirota, New York City, for plaintiffs.

Thorn and Gershon, Albany, NY, for defendants.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Numerous various defendant funeral homes in this consolidated proposed class action have moved pursuant to F.R.Civ.P. 12(b)(6) to dismiss plaintiff's RICO complaint, or have joined in motions made by similarly situated funeral homes.

Plaintiffs allege that numerous funeral homes utilized the services of, and favorably mentioned to clients, the defendant Cedar Hill Cemetery ("Cedar Hill") for use as a crematorium or columbarium when they knew or should have known that Cedar Hill would not treat the bodies of the deceased persons entrusted to them according to arrangements made by the funeral homes with the relatives of the deceased or in compliance with New York law. Plaintiffs, suing as representatives of a proposed class of bereaved survivors of deceased persons whose corpses have been so maltreated, brought this suit pursuant to 18 U.S.C. § 1964(c) alleging RICO violations, and pendent state claims including negligence, negligent misrepresentation, breach of contract, fraud, and intentional infliction of emotional distress.

The proposed class consists of persons who arranged for the bodies of their deceased relatives to be called for by to one of the defendant funeral homes, and when they decided upon cremation, were referred by their funeral director to Cedar Hill.

The complaint alleges that Cedar Hill, in the operation of its crematorium, violated numerous applicable state laws regulating cremation, including cremating more than one corpse in a retort at the same time, failing to sweep out the retorts, and failing properly to dispose of the remains, commingling the ashes of the plaintiffs' loved ones with those of strangers.

The complaint alleges further that some plaintiffs purchased space from Cedar Hill through the defendant funeral homes, based upon the fraudulent or negligent representation that Cedar Hill was lawfully engaged in the business of selling space in a public mausoleum or columbarium. Cedar Hill did not have the necessary permits to sell such space, or urns in which the cremains, or ashes would be permanently maintained, and there was in fact no assurance that such perpetual care would be provided.

Plaintiffs argue that based upon public record events, and the frequent visits of their personnel to the site, the defendant funeral homes knew or should have known of these outrageous circumstances. For example, Cedar Hill had been cited numerous times for violation of New York State law. In 1988, a New York State inspection of Cedar Hill found the retort was so poorly swept that "large particles of bone fragments were mingled with following cases." In December, 1990 Cedar Hill was cited by The New York State Division of Cemeteries for: failing to properly sweep the retort; for permitting the commingling of bodily remains; for disposing of remains in the trash; for not having signs posted as required by law on entrances prohibiting entry by unauthorized parties; for not having a written plan to insure that the proper remains of the deceased human being were delivered to the proper authorized party; and for not disclosing in writing to the next of kin or authorized party when the lid was removed from the metal caskets before cremation. During that same inspection, Cedar Hill was cited for building and selling space in a public mausoleum without the required approval of the New York State Cemetery Board and for violating Not–For–Profit Corporation Law 1509(b) by sale of crematorium containers. Compliance for all the citations was required by January 10, 1991.

In February 21, 1991, New York State Division of Cemeteries conducted an unannounced visit to Cedar Hill and discovered that most or all of the violations had not been corrected. In 1993 a fourth inspection was

held. The inspectors found continuing violations. On June 21, 1993 the *Times Herald Record* of Middletown reported that Cedar Hill was repeatedly charged with violating applicable law.

■ In deciding a Rule 12(b)(6) motion, the Court must accept the facts alleged in the complaint as true and assume that plaintiff would be able to prove them were the case to go to trial. *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Furthermore, the complaint should be construed favorably to the pleader, and all reasonable inferences drawn in his favor. *Furlong v. Long Island College Hosp.,* 710 F.2d 922 (2d Cir.1983).

■ The purpose of a motion to dismiss is to test the legal sufficiency of the complaint, not to see whether the plaintiff will ultimately prevail. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Even if it appears very unlikely that the plaintiff will recover, the motion to dismiss may still be denied as possibility of recovery is not the proper test for a Rule 12(b)(6) motion. The Supreme Court has held that a "rigorous standard" is to be applied to Rule 12(b)(6) motions. *Hospital Bldg. Co. v. Trustees of Rex Hosp.,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976). "A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■ Rule 9(b) requires that the circumstances constituting fraud be stated with particularity, but malice, knowledge, and other conditions of the mind of a person may be averred generally and detailed evidentiary matters need not be pleaded with detail.

■ A claim under civil RICO requires a showing of a "pattern of racketeering activity" which is more than sporadic and which indicates a threat of continuing illegal activity. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989); *Azrielli v. Cohen Law Offices,* 21 F.3d 512 (2d Cir.1994).

■ The predicate acts alleged to constitute the pattern of racketeering activity in this case involve mail fraud in violation of 18 U.S.C. § 1341. In order to plead a claim for mail fraud plaintiff must state the existence of a scheme to defraud, in which the defendant is a party. *United States v. Gelb,* 700 F.2d 875, 879 (2d Cir.), *cert. denied,* 464 U.S. 853, 104 S.Ct. 167, 78 L.Ed.2d 152 (1983); *United States v. Corey,* 566 F.2d 429, 430 n. 2 (2d Cir.1977).

■ The mail fraud statute is a criminal provision addressed to various nefarious plots to take unfair advantage of the innocent, and does not extend as far as do concepts of civil fraud. Consequently, a claim based on mail fraud must allege facts which, if proved, would permit a finder of fact to conclude beyond a reasonable doubt that the necessary criminal intent to defraud existed. See *United States v. Regent Office Supply Co.,* 421 F.2d 1174 (2d Cir.1970); *see also United States v. Walters,* 913 F.2d 388, 391–92 (7th Cir.1990); *United States v. Hedges,* 912 F.2d 1397 (11th Cir.1990); *Benson v. Allphin,* 786 F.2d 268, 276 (7th Cir.1986).

■ In the case of the funeral home defendants, facts sufficient to satisfy Fed. R.Civ.P. 9(b) or 18 U.S.C. § 1341 have not been alleged. The most that the complaint alleges with respect to the defendant funeral homes is that they failed to take adequate precautions once public record material and other clues should have alerted them to wrongdoing on the part of Cedar Hill. That one patronizes or works with a suspicious service provider reasonably may trigger further investigation and action by proper authorities. It may support liability on the part of those—such as the funeral homes here—who may have been negligent in employing or working with or recommending such an entity in ways affecting others. But by itself it does not constitute participation in a criminal scheme to defraud under the mail fraud statute or similar laws requiring criminal intent. *United States v. Falcone,* 109 F.2d 579 (2d Cir.), *aff'd* 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940) (sale of a common commodity—sugar—to buyer of large quantities properly suspected of bootlegging did

not support criminal conviction); *compare with Direct Sales Co. v. United States,* 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943) (volume discount purchases by physicians of addictive prescription drugs supported conviction).

No basis to infer existence of an ongoing pattern of racketeering activity on the part of the funeral homes is alleged in the complaint. There is nothing in the complaint to suggest that a continuing scheme involving the funeral homes existed which would make them a continuing threat to the public interest. No motive to participate is shown, and no benefit flowing to the funeral homes is shown by the facts alleged.

Absent special circumstances, not applicable here, where a federal court dismisses claims over which it has original jurisdiction, the court should dismiss the remaining state law claims. See 28 U.S.C. § 1367(b); *Girard v. 94th St. & Fifth Ave. Corp.,* 530 F.2d 66, 72 (2d Cir.), *cert. denied,* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976); *see also Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

All the funeral homes are dismissed from the present case because of the inadequacy of plaintiff's only federal claim—that asserted under RICO. They remain subject to suit in the New York Courts based upon state law claims against them, which are dismissed from this action without prejudice.

A status conference will be held on June 14, 1994 at 9:00 a.m. with respect to the parties and issues remaining in the case.

SO ORDERED.