**Melvin A. SEGLIN, M.D.,
Plaintiff-Appellant,**

v.

**Truman ESAU, et al.,
Defendants-Appellees.**

**No. 84-1285.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 7, 1984.

Decided Aug. 8, 1985.

---

Marshall E. Winokur, Ltd., Chicago, Ill., for plaintiff-appellant.

Edward B. Hirshfeld, Gardner, Carton & Douglas, Chicago, Ill., for defendants-appellees.

Before CUDAHY and POSNER, Circuit Judges, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

This is an antitrust lawsuit filed against a hospital, its parent corporation, and members of the hospital peer review staff by a physician who was denied hospital admittance privileges. The district judge dismissed the complaint for lack of subject matter jurisdiction and for failure to state a claim. We affirm on the ground of failure to state a claim.

## I

The facts as alleged in the complaint are as follows. Plaintiff-appellant Melvin A. Seglin, M.D., is a National Board certified licensed psychiatrist. Defendant Old Orchard Hospital·("Old Orchard") is a psychiatric hospital located in Skokie, Illinois. Defendant Community Psychiatric Center, Old Orchard's parent corporation, is a Nevada corporation which owns and operates at least nineteen hospitals in the United States. In October 1981, individual defendants Doctors Truman G. Esau, Paul J. Kachoris, Dennis Grygotis, and Howard Klapman were members of Old Orchard's Ad Hoc Peer Review Committee and individual defendant Dr. Karl Willrich was chairperson of Old Orchard's Administrative Committee.

Prior to 1981, Dr. Seglin was a member of Old Orchard's physician staff. On occasion he had admitted patients to the hospital for treatment. In October 1981, Dr. Seglin's staff and admitting privileges at Old Orchard were suspended. In 1983, the Judicial Review Committee of Old Orchard reinstated Dr. Seglin's privileges; however, "as a direct consequence of the continuing wrongful conduct of the defendants he [Seglin] has effectively and permanently lost the privilege and right to furnish services to his patients at Old Orchard Hospital."

On July 27, 1983, Dr. Seglin filed the instant lawsuit, alleging *inter alia* that the individual defendants, Old Orchard, and its parent corporation "conspired and combined to violate sections 1 and 2 of the Sherman Antitrust Act," 15 U.S.C. §§ 1, 2 (1982), when they suspended Dr. Seglin's hospital staff membership and privileges. Dr. Seglin alleged several links between the defendants' business and interstate commerce.

The defendants, individually and through the facilities of the Old Orchard Hospital, provide psychiatric services to patients who travel in interstate commerce to receive such services.

The defendants, or one of them, purchase or receive equipment and supplies in interstate commerce in order to provide psychiatric services to patients at Old Orchard Hospital.

The defendants, or one of them, receive payments in interstate commerce from the government agencies and private insurance carriers for providing services at Old Orchard Hospital.

It was further alleged that these links to interstate commerce would be affected by defendants' alleged antitrust violations in the following ways:

(a) Prices for psychiatric services at Old Orchard Hospital will be fixed, rigged, and established at artificial and noncompetitive levels;

(b) Competition among psychiatrists at Old Orchard Hospital will be restrained, suppressed, and eliminated;

(c) Purchasers of psychiatric services at Old Orchard Hospital will be denied the benefit of full, free, and open competition in the provision of such services;

(d) Fewer patients will travel in interstate commerce to obtain services from the reduced staff of the hospital;

(e) The defendants will purchase or receive less equipment or supplies through interstate commerce in furnishing services at the hospital; and

(f) The defendants, or one of them, will receive fewer payments in interstate commerce from government agencies and private insurance carriers for providing psychiatric services at the hospital.

Defendants filed a motion to dismiss the complaint. *See Motion by Defendants to Dismiss all Counts of Plaintiff's Complaint* (August 31, 1983) *Seglin v. Esau,* No. 83 C 5176. In their memorandum of law filed in support of their motion to dismiss, defendants argued that plaintiff had failed to allege either that "the activities complained of were actually in interstate commerce, or, ... that ... [the activities] have a substantial effect on some other appreciable activity demonstrably in interstate commerce." *See* Defendants' Memorandum at 14. Thus, under the rationale of *McLain v. Real Estate Board of New Orleans, Inc.,* 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980), and *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976),

the federal courts lacked subject matter jurisdiction, and the complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1).

The defendants also argued, in the alternative, that the complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Count I, alleging a violation of section 1 of the Sherman Act, is deficient according to defendants because plaintiff has failed to "allege anticompetitive effects in the Chicago area market for psychiatric services." *See* Defendants' Memorandum at 20. Count II, alleging a violation of section 2 of the Sherman Act, is similarly deficient because the plaintiff fails to allege that the defendants had the requisite market power and intent to monopolize. *Id.* at 23–24. Finally, defendants claim both counts are deficient because, as a matter of law, defendants are incapable of conspiring with one another, *id.* at 24–25 (citing *Photovest Corp. v. Fotomat Corp.,* 606 F.2d 704, 726–27 (7th Cir.1979), *cert. denied,* 445 U.S. 917, 100 S.Ct. 1278, 63 L.Ed.2d 601 (1980)); *Moles v. Morton F. Plant Hospital, Inc.,* [1980–81] Trade Cas. ¶ 63,600 (M.D.Fla. 1978), *aff'd mem.,* 617 F.2d 293 (5th Cir.), *cert. denied,* 449 U.S. 919, 101 S.Ct. 317, 66 L.Ed.2d 147 (1980), and because plaintiff has not sufficiently alleged antitrust injury, *id.* at 26–27.

In support of their motion to dismiss, the defendants set forth additional "facts" in their memorandum of law. In particular, defendants stated that in 1979 Dr. Seglin admitted seven patients to Old Orchard; in 1980, he admitted three patients; and from January to October, 1981, he admitted one patient. Throughout the period of Dr. Seglin's suspension, and continuing through the present, Dr. Seglin had admitting privileges at Lutheran General Hospital in Park Ridge, Highland Park Hospital in Highland Park, and Michael Reese Hospital in Chicago.

In his memorandum of law filed in opposition to defendants' motion to dismiss, plaintiff candidly refused to controvert any of defendants' additional "facts" or to set forth any additional facts in support of

subject matter jurisdiction.[1] Although he acknowledged that the defendants challenged the complaint's subject matter jurisdiction, he stated that defendants' real contention was failure to state a claim under Fed.R.Civ.P. 12(b)(6) and that motions under rule 12(b)(6) could only be based on the facts as alleged in the complaint, unless additional facts were set forth in accompanying affidavits, thereby converting the motion to dismiss into a motion for summary judgment.

On January 23, 1984, the district judge issued a memorandum opinion and order dismissing the complaint in its entirety. In his opinion, the judge held that

> [n]owhere is it alleged, in a manner believable to the rational intellect, how the sixteen month suspension of the admitting privileges of a doctor who only rarely admitted patients to Old Orchard will have the necessary effect on interstate commerce. The allegations plaintiff has made relating to effects on interstate commerce are entirely conclusory. No fact is alleged from which it might be said that assuming that fact to be true, interstate commerce has or will be touched directly or even indirectly. On

the whole the assertions pleaded are ineffectual to serve as the basis for the application of the Sherman Act. The alleged conspiracy is not one from which a substantial effect on interstate commerce can be imputed or inferred.... [citations omitted]. Since here there would not be an effect on interstate commerce flowing from the alleged acts of the defendants, counts one and two should be dismissed for lack of subject matter jurisdiction.

District Court Memorandum Opinion and Order at 3. The district judge also held that the plaintiff failed to state a claim because he did not allege "a plurality of actors as is required by the conspiracy language of Section 1 of the Sherman Act," *id.* at 4, "a measurable anticompetitive effect on the Chicago area market for psychiatric services ..., the requisite market power or intent to monopolize to violate Section 2 of the Sherman Act ..., [or] antitrust injury due to the activities of the defendants ...," *id.* at 5. The plaintiff promptly appealed the dismissal to this court without requesting an opportunity to amend his complaint or a reconsideration of the dismissal order.

Plaintiff's new facts, however, are belatedly presented to this court. A reviewing court will not consider facts not presented to the district court in the first instance. In addition, this circuit's rule 9(e) prohibits the introduction of new matter in a reply brief. The reason for this rule is that if we were to consider such new material, the opposing party would have to be given an opportunity to file a supplemental brief in response. The possibilities for continued briefing become endless. Thus, given that plaintiff gave neither the district judge nor the defendants an opportunity to view these facts, we refuse to consider them. Plaintiff's complaint that he was presented with a Hobson's choice is simply without merit. Plaintiff easily could have objected to the introduction of defendants' facts, thereby preserving his objection to this procedure, and then proceeded to introduce additional facts in support of his jurisdictional allegations. Indeed, it is beyond cavil that the burden of setting forth sufficient jurisdictional facts remains with the plaintiff. Once plaintiff's original jurisdictional allegations have been controverted, he must come forward with additional evidence to support his jurisdictional claim. *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir.1979).

---

**1.** In his reply brief, plaintiff for the first time sets forth additional facts that he presumably desires this court to consider should we decide that defendants are correct that the district judge properly considered the facts raised by defendants in their memorandum of law. In essence, the plaintiff claims that his hospital privileges were suspended in retaliation for his opposition to the appointment of defendant Truman Esau to the position of Medical Director at Old Orchard, and his testimony against the parent corporation when it sought an application for a license to operate a hospital in a suburb of Chicago. He apparently concedes that he rarely admitted patients to Old Orchard, but he claims that this was because Esau and other doctors on Old Orchard's hospital staff became increasingly hostile to the plaintiff and his patients because of the doctors' desire to improve their private practices by excluding plaintiff from competition. Nowhere in the reply brief or the record, however, does plaintiff deny defendants' assertions that he only admitted eleven patients to Old Orchard from 1979 to October 1981, or that he had admitting privileges at other hospitals; he also does not state what acts by the defendants resulted in his permanent exclusion from the hospital.

## II

The first issue raised by this appeal is whether, when deciding if the complaint should be dismissed, the district judge erroneously considered the additional "facts" set forth by defendants in their memorandum of law? Plaintiff contends that the district judge could not consider them because a failure to adequately allege "effect on interstate commerce"[2] is, in reality, a failure to state a claim under the Sherman Act, not a failure to allege subject matter jurisdiction. When deciding if a plaintiff has failed to state a claim, the court must take the plaintiff's allegations as true. It may only consider extra-complaint facts if they are set forth in affidavits, not unsworn memoranda of law. Thus, in the instant case, the district judge was required to ignore defendants' additional facts and to take plaintiff's allegations as true. The plaintiff further contends that even if the defendants' claim was, in reality, one for lack of subject matter jurisdiction, the district judge could only consider additional facts if they were set forth in affidavits or presented at an evidentiary hearing.

Defendants counter that a "substantial and adverse effect on interstate commerce" is a jurisdictional requirement. As a result, defendants were entitled to contravene plaintiff's jurisdictional facts by presenting any additional evidence, even by way of a memorandum of law. By so doing, defendants shifted the burden to plaintiff to come forward with sufficient facts to support antitrust jurisdiction. The district judge was not required to take the allegations in the complaint as true, and he could decide independently of the complaint whether he had jurisdiction over plaintiff's cause of action. Defendants argue further that, even if plaintiff is correct that failure to adequately allege an effect on interstate commerce is a failure to state a claim, the district judge properly considered the defendants' additional facts because those facts were set forth in a memorandum of law signed pursuant to Fed.R.Civ.P. 11. That rule requires an attorney to sign all papers submitted to the court; the attorney, by signing, certifies, among other things, that the paper "is well grounded in fact...." Fed.R.Civ.P. 11. The defendants' signed memorandum qualifies as "matters outside the pleading ... presented to and not excluded by the court," Fed.R.Civ.P. 12(b)(6), that converts a motion to dismiss under rule 12(b)(6) into a summary judgment motion under Fed.R.Civ.P. 56. Because plaintiff did not contravene defendants' new facts, the district judge properly considered them as true and dismissed plaintiff's complaint.

There is considerable force in plaintiff's argument that a failure to adequately allege "effect on interstate commerce" is a failure to state a claim rather than a failure to allege subject matter jurisdiction. In fact, at least two commentators and one federal district court have argued persuasively that a failure to allege an effect on interstate commerce is a failure to state a claim and not a failure to allege subject matter jurisdiction. *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 494 F.Supp. 1161, 1171–72 n. 21 (E.D.Pa.1980) (Becker, J.); P. Areeda & D. Turner, *Antitrust Law,* ¶ 232.1 at 97–99 (Supp.1982); Comment, *Sherman Act "Jurisdiction" in Hospital Staff Exclusion Cases,* 132 U.Pa. L.Rev. 121 (1983).

In the instant case, however, it is unnecessary for us to decide whether rule 12(b)(6) or 12(b)(1) governs the defendants' motion to dismiss, for even if we view this

---

**2.** A plaintiff may adequately allege the requirement of "interstate commerce" either by pleading sufficient facts that the defendants' alleged illegal conduct is "in interstate commerce" or has a substantial and adverse effect upon interstate commerce. *McLain v. Real Estate Board of New Orleans, Inc.,* 444 U.S. 232, 241–42, 100 S.Ct. 502, 508–09, 62 L.Ed.2d 441 (1980); *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 743, 96 S.Ct. 1848, 1851, 48 L.Ed.2d 338 (1976). There is no dispute in this case that plaintiff is attempting to fulfill only the "substantial and adverse effect on interstate commerce" prong of the *McLain* test. Thus, for purposes of this appeal, we use only the more specific phrase "substantial and adverse effect" on interstate commerce in lieu of the more general one, "interstate commerce."

as a section 12(b)(6) dismissal and consider only the well-pleaded facts of the complaint,[3] plaintiff has simply failed to adequately allege any nexus with interstate commerce.[4]

In arguing that his complaint is sufficient to withstand a rule 12(b)(6) motion, plaintiff relies heavily on *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), in which the Court stated that a complaint should be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45–46, 78 S.Ct. at 102. Plaintiff apparently believes that *Conley* mandates that any antitrust complaint in which the plaintiff merely alleges that the defendants acted in concert to temporarily interfere with the plaintiff's employment opportunity is sufficient to withstand a motion to dismiss. But that is not the law of this circuit. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985); *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir.1984); *Havoco of Am., Ltd. v. Shell Oil Co.*, 626 F.2d 549,

553 (7th Cir.1980). Under *Conley* and *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), "a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Sutliff, Inc.*, 727 F.2d at 654 quoting *In re Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir.1981), *cert. dismissed sub nom., Weyerhauser Co. v. Lyman Lamb Co.*, 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983). In practice, this means that a plaintiff cannot survive a rule 12(b)(6) motion merely by alleging bare legal conclusions while failing to set forth facts that "at least outline or adumbrate" a violation of the Sherman Act. *Car Carriers, Inc.*, 745 F.2d at 1106 quoting *Sutliff, Inc.*, 727 F.2d at 654.

In the instant case, the only *facts* that the plaintiff has alleged are that (1) the plaintiff was suspended from using the hospital facilities for approximately sixteen months and (2) the defendants provide psychiatric services to patients who travel in interstate commerce to receive such services, purchase equipment in interstate com-

---

3. Defendants' claim that even if we decide this case on the basis of rule 12(b)(6) we may still consider the extra-complaint facts is without merit. "[I]t is axiomatic that the complaint may not be amended by the briefs [in support of or in] opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). We note that defendants could easily and properly have preserved those facts for our review by submitting them to the district court in affidavits and then moving for summary judgment.

4. Plaintiff's claim also borders on the frivolous, and hence is arguably subject to dismissal for failure to raise a substantial federal question. *See Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974); *Bell v. Hood*, 327 U.S. 678, 681–82, 66 S.Ct. 773, 775–76, 90 L.Ed. 939 (1946). Nonetheless, given that it is now well-settled that under certain circumstances a single physician may bring an antitrust action against a hospital and its staff for excluding that physician from providing services at the hospital, *see Marrese v. Interqual, Inc.*, 748 F.2d 373, 381–82 & n. 15 (7th Cir.1984),

*cert. denied*, —— U.S. ——, 105 S.Ct. 3501, 87 L.Ed.2d 632 (1985), and cases cited therein, we do not affirm the dismissal of the instant action on the grounds of frivolousness.

We also note that defendants have raised, albeit belatedly, a substantial claim that plaintiff's complaint is subject to dismissal pursuant to the state action exemption. *See Hoover v. Ronwin*, 466 U.S. 558, 104 S.Ct. 1989, 1995, 80 L.Ed.2d 590 (1984); *Marrese*, 748 F.2d at 384. Defendants did not present this argument to the district judge, but rather raised it for the first time pursuant to this court's circuit rule 11 (citation of additional authority) after briefing in this court had been completed. This court has recently affirmed the dismissal of a similar action on the basis of the state action exemption even though the issue was not originally presented to the district judge, *see Marrese*, 748 F.2d at 384. Nonetheless, in that case, the issue had been fully briefed on appeal. Plaintiff in the instant action has not had the opportunity to respond to defendants' argument. In addition, unlike in *Marrese*, in the case at bar we can affirm the dismissal on the ground of failure to state a claim. Hence we do not reach the issue of a state action exemption.

merce, and receive insurance payments through interstate commerce. Plaintiff has set forth no facts, other than a mere conclusory statement, from which it can be inferred that he has permanently been excluded from providing psychiatric services at the hospital or that his suspension from the hospital was motivated by defendants' desire to fix prices or restrain competition. Thus plaintiff's complaint boils down to the single assertion that his sixteen-month suspension from the hospital had an effect on defendants' interstate commerce activities. This is insufficient to establish the required nexus with interstate commerce.

Plaintiff also appears to contend that the interstate commerce nexus requirement has been satisfied merely by the allegations that several of defendants' activities, such as purchases, are in interstate commerce. A split among the circuits exists as to whether the interstate commerce nexus requirement is satisfied when the plaintiff alleges that any of defendants' activities affect interstate commerce or only when the plaintiff alleges that defendants' allegedly unlawful conduct somehow affects interstate commerce. *See Hayden v. Bracy,* 744 F.2d 1338, 1343 n. 2 (8th Cir.1984) (defendant's allegedly illegal conduct must affect interstate commerce); *Furlong v. Long Island College Hospital,* 710 F.2d 922, 925–26 (2d Cir.1983) (same); *Cordova & Simonpietri Ins. Agency Inc. v. Chase Manhattan Bank,* 649 F.2d 36, 45 (1st Cir.1981) (same); *Crane v. Intermountain Health Care, Inc.,* 637 F.2d 715, 719, 722–24 (10th Cir.1980) (as amended en banc, Jan. 30, 1981) (same); *Western Waste Services Systems v. Universal Waste Control,* 616 F.2d 1094, 1097 (9th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980) (any of the defendant's general in-

terstate business activities will satisfy the interstate commerce nexus requirement).

On the basis of the reasoning set forth in *Furlong* and *Cordova,* we now reject the view that the interstate commerce nexus requirement can be established simply by "showing that some aspects of a defendant's business have a relationship to interstate commerce." *Furlong,* 710 F.2d at 926. Rather, we align ourselves with the First, Second, Eighth, and Tenth Circuits and hold that "the inquiry must be whether the defendants' activity that has allegedly been 'infected' by unlawful conduct can be shown ' "as a matter of practical economics" to have had a not insubstantial effect on the interstate commerce involved.' " *Id.,* quoting *McLain,* 444 U.S. at 246, 100 S.Ct. at 511. Thus, to survive a motion to dismiss, the "plaintiff must allege sufficient facts concerning the alleged violation and its likely effect on interstate commerce to support an inference that the defendants' activities infected by illegality either have had or can reasonably be expected to have a not insubstantial effect on commerce." *Id.*[5]

As we have already noted, plaintiff's sole factual allegation is that, for some arbitrary reason, the defendants suspended his hospital privileges for sixteen months. Although we hesitate to say that the suspension or denial of one physician's hospital privileges can never state an antitrust claim, we believe that it is incumbent upon the plaintiff to plead some additional facts from which it can be inferred that the case falls within the ambit of the Sherman Act. *See Car Carriers Inc.,* 745 F.2d at 1110 (quoting *Dunn & Mavis, Inc. v. Nu-Car Driveaway, Inc.,* 691 F.2d 241, 243 (6th Cir. 1982)[6] (" 'When stripped to its essential

---

**5.** A second issue arises in those cases as to whether the required nexus with interstate commerce can be based on the activities of either the plaintiff or the defendants, or only on those of the plaintiff. *See Furlong,* 710 F.2d at 926. We do not decide this issue for even if the interstate commerce nexus may be predicated on defendants' activities, plaintiff in the instant case has failed to adequately allege the required nexus.

**6.** We reiterate the observation we made in *Havoco of Am., Ltd. v. Shell Oil Co.,* 626 F.2d 549, 559 (7th Cir.1980), that it is "hard to ignore the suspicion that the facts of this case have been forced into an antitrust mold to achieve federal jurisdiction." This suspicion is amply reinforced by the fact that the plaintiff's allegations are taken *in haec verba* from some of the allegations in the complaint in *Dos Santos v. Columbus-Cuneo-Cabrini Medical Center,* 684 F.2d

allegations, the complaint does no more than state plaintiff's ... disappointment at losing ...' " his hospital privileges.).

In this regard, it is instructive to compare the facts as alleged in the complaint in the instant case with those in other cases in which the court has sustained the adequacy of the complaint. For example, in *Marrese v. Interqual*, 748 F.2d 373 (7th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 3501, 87 L.Ed.2d 632 (1985), the plaintiff alleged that his hospital clinical privileges had or were about to be permanently revoked on the false grounds that he was unqualified to practice. Plaintiff further alleged that approximately forty-five percent of his patients travelled from out-of-state to receive treatment from him at the defendant hospital, that he himself occasionally travelled across state lines to provide medical treatment, and that he purchased equipment and received insurance payments from out of state—the total amount of said out-of-state purchases and payments exceeding $500,000 annually. Finally, the plaintiff alleged that approximately twenty-five percent of the defendant-hospital's patients travelled from out-of-state to receive medical care, that these out-of-state patients incurred billings of approximately $10 million annually, and that the hospital pur-

chased approximately $5 million worth of goods annually from various out-of-state sources. Thus, in *Marrese*, sufficient facts were set forth from which it could be inferred that "the plaintiffs ... [could] demonstrate a substantial and adverse effect upon interstate commerce as a matter of practical economics." *Id.* at 383. *See also Cardio-Medical Associates, Ltd. v. Crozer-Chester Medical Ctr.*, 721 F.2d 68 (3d Cir. 1983) (Plaintiffs alleged that the defendants had entered into contracts and other agreements to prevent the plaintiffs from using certain of defendants' specialized cardiological equipment in the defendants' hospital. Plaintiffs further alleged that both they and the individual defendants offered cardiological services in a small tri-state area and that 12–15% of their patients are from out of state accounting for over $100,000 of plaintiffs' annual revenue.).

In *Tarleton v. Meharry Medical College*, 717 F.2d 1523 (6th Cir.1983), the plaintiff alleged that he had been terminated because of his refusal to join a plan prepared by the college faculty that required salaried faculty members to charge their private patients certain fees. The plan allegedly was adopted to promote price fixing and to reduce competition. He further al-

1346 (7th Cir.1982), and by the plaintiff's unsupportable plea for $15.5 million in damages before trebling. Of that amount, $13.5 million are claimed as damages for the alleged antitrust violations. *Compare id.*, No. 81–C–4296 (physician claims $500,000 damages as a result of permanent exclusion from providing services at defendant's hospital). Although we do not pretend to be able to quantify the appropriate damages for the alleged violations (if proven), we have no doubt that even if plaintiff had been permanently excluded from using the hospital facilities, he could not prove that he had suffered anything close to $13.5 million in damages. Indeed, plaintiff's counsel conceded at oral argument that the request for damages had no basis in fact.

In addition, we also note that plaintiff made no attempt below either to buttress the allegations of his complaint with affidavits or to amend his complaint to cure any of the deficiencies identified by the district judge. Although it is true that the plaintiff is entitled to stand on the allegations of his original complaint, the plaintiff's deliberate failure "to pro-

duce anything approaching a significant showing of" *Majd-Pour v. Georgianna Community Hospital, Inc.*, 724 F.2d 901, 903 (11th Cir.1984), an antitrust claim is indicative of the true nature of this complaint. *See also Furlong*, 710 F.2d at 928.

With respect to the request for relief in this complaint, we refer plaintiff's counsel to Fed.R. Civ.P. 11 and admonish him that this complaint comes dangerously close to violating that rule, as it existed when this complaint was filed on July 17, 1983, and as it now exists subsequent to the 1983 amendments to the Federal Rules of Civil Procedure. Each of the versions of that rule require that an attorney sign the pleading, thereby certifying that to "the best of his knowledge" there is good ground to support it. Here, plaintiff's counsel conceded at oral argument that the request for damages had no basis in fact. Hence the district judge could properly have stricken plaintiff's claim for damages. In addition, the bar is now put on notice that in the future this court will not tolerate such groundless pleading.

leged that the plan had an impact on the interstate movement of patients and medical fees. Defendants did not dispute that all medical faculty members were required to adhere to the plan. In sustaining the complaint, the court emphasized that the plan "fixed medical fees at artificial levels." *Id.* at 1532. Thus the court implicitly found that the alleged antitrust violation might "plausibly" have an effect on interstate commerce, *see Car Carriers, Inc.,* 745 F.2d at 1107 n. 4, 1109, because price fixing of *many local* physicians' services could conceivably have ramifications at the interstate level.[7]

Plaintiff relies heavily on *Dos Santos v. Columbus-Cuneo-Cabrini Medical Center,* 684 F.2d 1346 (7th Cir.1982). Plaintiff's reliance, however, is decidedly misplaced. In that case, this court never expressly decided whether the plaintiff adequately alleged a nexus with interstate commerce and noted that the issue was open to reconsideration on remand. *Id.* at 1348 n. 2.[8] In addition, in contrast to the allegations in the instant complaint, the allegations of the complaint in *Dos Santos* set forth more facts from which it could plausibly be inferred that the defendant's acts might substantially affect interstate commerce. In *Dos Santos* the plaintiff, an anesthesiologist, alleged that an exclusive dealing contract existed between the defendants hospital and the Anesthesia Associates of Lake Shore, Ltd. The Associates was a corporation engaged in the business of providing anesthesia services to various hospitals. Pursuant to the contract, only anesthesiologists who were members of the Associates were permitted to provide anesthesia services at the hospital. Plaintiff was inexplicably terminated from her employment at the Associates, and shortly thereafter she was informed by the hospital that she could no longer be permitted to offer anesthesia services there. The plaintiff in *Dos Santos* alleged essentially the same effect on interstate commerce that the plaintiff alleges in the instant action. Nonetheless, although we do not hold that the *Dos Santos'* plaintiff's complaint satisfies the interstate commerce nexus requirement, we do note that in *Dos Santos,* the "plausible" inference was raised that the exclusive dealing contract would result in fixed prices and restrained competition at the hospital.[9] By contrast, the mere sixteen-month disciplinary suspension in this case does not, as a matter of practical economics, raise any "plausible" inference of a substantial effect on interstate commerce. *Compare Hayden,* 744 F.2d at 1342–43 (disciplinary action requiring physician to attend ninety-days of post-graduate education does not as a matter of practical economics substantially affect either the disciplined physician's or the defendants' receipt of interstate insurance pay-

---

7. Many of the facts relied upon by the court to sustain the complaint were submitted by the plaintiff by way of affidavit. Thus it is unclear whether that complaint, standing alone, would have survived a motion to dismiss.

8. If the issue were considered to be one of subject matter jurisdiction, it can be argued that in deciding the merits of the appeal, this court in *Dos Santos* implicitly found that the complaint adequately alleged a nexus with interstate commerce for it is axiomatic that a court without subject matter jurisdiction cannot rule on the merits and that a court can raise, *sua sponte,* the issue of subject matter jurisdiction. Nonetheless, we hesitate to infer that the court ruled on the question particularly when the issue of whether a complaint satisfies the requirements of antitrust subject matter jurisdiction is generally complex and fact-based, and would not immediately come to the court's attention.

9. In *Dos Santos* this court reversed the grant of a preliminary injunction and remanded the case for further proceedings. In our opinion, we observed that the plaintiff could only prevail if she showed that the contract "results in a substantial foreclosure of competition in ... a relevant market." 684 F.2d at 1352. We also observed that we had "reason to doubt whether the relevant market can be sliced so small as to embrace only a single hospital." *Id.* at 1353. On remand the action was dismissed pursuant to the defendants' motion for summary judgment on the ground, *inter alia,* that the plaintiff failed to demonstrate that defendants' allegedly illegal activities had caused a substantial foreclosure of competition in any relevant market. *See Dos Santos v. Columbus-Cuneo-Cabrini Medical Center,* No. 81–C–4296, *Summary Judgment and Order, Findings of Fact and Conclusions of Law,* at 4, 10 (N.D.Ill. Oct. 25, 1983). That dismissal apparently was never appealed.

ments, purchase of out-of-state supplies, or treatment of out-of-state patients); *Majd-Pour v. Georgiana Community Hospital, Inc.*, 724 F.2d 901, 902 (11th Cir.1984) (The court observed, but did not address the issue, that the plaintiff-doctor's antitrust complaint was dismissed by the district judge because "jurisdiction for the [federal] antitrust count ... was wholly lacking". Plaintiff merely alleged that his hospital privileges were terminated.); *Furlong*, 710 F.2d at 927 ("[T]his complaint fails to set forth any facts from which it is inferable that the defendants' ... [receipt of interstate insurance payments and federal subsidies, and purchase of out-of-state goods and services], infected with the ... [defendants' curtailing of the plaintiff-doctor's provision of anesthesia services at the hospital] are likely to have a substantial effect on commerce.").[10]

All of these cases demonstrate that although *"Conley* permits a pleader to enjoy all favorable inferences from facts that have been pleaded ... [it] does not permit conclusory statements to substitute for minimally-sufficient factual allegations." *Furlong*, 710 F.2d at 927. As we have already stated in *Marrese*, and as the court stated in *Furlong*, 710 F.2d at 928, we do not hold that the exclusion or suspension of one doctor from providing services at a hospital can never state an antitrust claim. But we rule that plaintiffs are required to be more specific as to the facts of the interstate commerce nexus before we will compel defendants to engage in protracted, expensive antitrust discovery.[11] Failure to uphold the dismissal of the instant complaint on the ground of lack of any allegations regarding a plausible nexus with interstate commerce would mean that virtually every physician who is ever temporarily denied hospital privileges for whatever reason could drag the hospital and members of its staff into costly antitrust litigation merely by alleging that the defendant receives payments, goods, or equipment in

---

10. *See also Shahawy v. Harrison*, 755 F.2d 1432 (11th Cir.1985). In *Shahawy*, the court sustained the dismissal of the plaintiff-doctor's antitrust action where plaintiff's interstate commerce allegations were based on the interstate flow of patients, revenues, and purchases of supplies. Plaintiff's allegations were so vague and lacking in absolutely any quantification that the court could not even conjecture, whether as a "matter of practical economics" the alleged effect on interstate commerce was substantial. *Id.* at 1439. *Shahawy*, however, does not support the result we reach today; the opinion has been withdrawn pending reconsideration *en banc*.

11. The result we reach today is not inconsistent with *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272 (7th Cir.1983). In that case, we reversed the dismissal of an antitrust complaint because "[i]t may well be that ... [the plaintiff] can demonstrate a substantial effect on interstate commerce as a matter of practical economics, and at this point we cannot say beyond doubt that ... [the plaintiff] can prove no set of facts to show the required effect on interstate commerce." *Id.* at 1282. We do not interpret this passage to mean that a plaintiff can avoid a section 12(b)(6) dismissal merely by stating a legal conclusion and then arguing that, at some later date, he might be able to flesh out the complaint with additional facts.

As this court observed in *Car Carriers, Inc.* and *Sutliff, Inc.*, the plaintiff must plead specific facts that are within his knowledge to support his claim. He cannot throw himself on "the mercy of the court." The court is not required to speculate as to the many possible facts that might have been alleged. In the instant case plaintiff might have alleged, for example, how many patients he treated at the defendant-hospital, what percentage of his patients are from out of state, how much of his own revenues came from out-of-state insurers, at what other hospitals he had admitting privileges, or what particular acts of defendants have led to his *de facto* permanent suspension from the hospital. Instead, he chose to allege only the bare fact of his suspension and then ask this court to speculate as to the rest. Nothing in *Bunker Ramo, Car Carriers, Inc.*, or *Sutliff, Inc.*, requires this court to assume plaintiff's burden of adequately pleading his claim.

There may be some cases in which all of the facts supporting the requirement of a nexus with interstate commerce are within a defendant's exclusive knowledge. This case, however, is not one of those. Unless the plaintiff admitted a substantial number of patients to the defendant-hospital and could not have admitted them elsewhere, his suspension or exclusion from the hospital could not substantially affect any of defendants' interstate activities. On the other hand, it might possibly affect plaintiff's interstate activities; but this plaintiff would know, and he should have pleaded it.

**1284**

interstate commerce. We decline to encourage this procedure.

The dismissal of the action is affirmed.