**Robert M. JAFFEE, M.D., Plaintiff,**

v.

**HORTON MEMORIAL HOSPITAL, John W. Norton, Marvin Corn, M.D., Kenneth Adams, M.D., Edward Fisher, M.D., John Tortorella, M.D., James M. Pierce, the Horton Hospital Eye, Ear, Nose and Throat Department, Arden Hill Hospital, A. Gordon McAleer, Mark Stamm, M.D., Leslie Green, M.D., and the Arden Hill Ophthalmology Department, Defendants.**

**No. 87 Civ. 1842 (CLB).**

United States District Court,
S.D. New York,
White Plains Division.

March 2, 1988.

Rochman, Platzer & Fallick by Irwin Rochman, New York City, for plaintiff.

Malvean, Lewis, Sherwin, McDermott & Rosenstein by Monte Rosenstein, Middletown, N.Y., for Horton.

Hayt, Hayt & Landau by Aaron R. Cahn, Great Neck, N.Y., for Arden Hill.

Feinman, Greher & Kave by Warren Greher, Newburgh, N.Y., for Stamm and Green.

## MEMORANDUM AND ORDER

BRIEANT, Chief Judge.

By motion argued on January 13, 1988 and fully submitted on January 29th in this action under the Clayton Act, 15 U.S.C. §§ 15 and 26, the Sherman Anti-Trust Act, 15 U.S.C. §§ 1 and 2, and certain provisions of New York State law, defendants move, under F.R.Civ.P. 12(b)(6), to dismiss the complaint of plaintiff Robert M. Jaffee, M.D., for failure to state a claim upon which relief can be granted. For the reasons discussed below, that motion is granted.

*Background*

Plaintiff is a licensed physician, board certified in ophthalmology and practicing primarily in Orange County, New York. On various occasions from 1983 to 1986, he sought and was denied staff membership or professional privileges at the Elizabeth A. Horton Memorial Hospital ("Horton") and Arden Hill Hospital ("Arden Hill"). Alleging that the denials by Horton were motivated by an impermissible monopolistic motive, rather than by consideration of his ability or character, Dr. Jaffee filed suit against Horton, its President and Chief Executive Officer, John W. Norton, its Vice President of Professional Services, James M. Pierce, and the Horton Eye, Ear, Nose and Throat Department, along with the De-

partment Chairman, Dr. Marvin Corn (the "Horton defendants") in March of 1987.

On August 8, 1987, the Horton defendants moved under F.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim, alleging that the facts described therein were insufficient to establish jurisdiction under the Sherman Act. Thereafter, on October 5, 1987, plaintiff amended his complaint with leave of this Court to include (a) Drs. Kenneth Adams, Edward Fisher and John Tortorella of Horton (also "Horton defendants"), and (b) Arden Hill Hospital, its Executive Director A. Gordon McAleer, and all doctors practicing ophthalmology and enjoying staff privileges at Arden Hill, including specifically but not exclusively Drs. Mark Stamm and Leslie Green (the "Arden Hill defendants").

This Court denied the motion of the Horton defendants to dismiss, granting leave to renew at the conclusion of all pre-trial proceedings. This ruling, made in a brief oral decision announced from the bench, derived at least in part from *Konick v. Champlain Val. Physicians Hosp. Med. Ctr.*, 561 F.Supp. 700, 710 and n. 10 (N.D. N.Y.1983), *aff'd*, 733 F.2d 1007 (2d Cir.), *cert. denied*, 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984), which held in substance that the Sherman Act may be invoked in a medical staff privileges action if the defendant is shown to be involved in interstate commerce, since the alleged restraint on competition would affect interstate commerce.

On January 13, 1988 the newly-joined Arden Hill defendants were heard on a motion grounded on the same contentions of fact and law as the Horton defendants' earlier motion. Primarily by reference to the case of *Furlong v. Long Island College Hosp.*, 710 F.2d 922 (2d Cir.1983), discussed *infra*, the Arden Hill defendants convinced this Court to reconsider whether the law of this Circuit requires more specific pleading of facts showing an effect on interstate commerce, than that provided in Dr. Jaffee's amended complaint. The Horton defendants were permitted to, and did, join the Arden Hill motion on January 27, 1988.

The Court allowed plaintiff's counsel two weeks to respond to these motions, and advised him not to rely on our prior ruling of October 5th. This *caveat* notwithstanding, plaintiff's counsel informed the Court by letter dated January 19, 1988, that he would merely resubmit his opposing papers from the Horton motion, since "this motion is the same motion, based on the same reasoning and the same cases, which was made previously by defendant Horton Memorial Hospital." Thus, the notice afforded all parties concerning the Court's reconsideration of the motion was sufficient.

*Disposition*

While this Court is naturally reluctant to alter a pretrial ruling in a pending case, it is empowered to do so. "It is well established that ... rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment." *In re "Agent Orange" Product Liability Litigation*, 733 F.2d 10, 13 (2d Cir.1984), *citing, Slotkin v. Citizens Casualty Co. of New York*, 614 F.2d 301, 312 (2d Cir.1979), *cert. denied*, 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 243 (1980). Indeed, "there is no imperative duty to follow the earlier ruling—only the desirability that suitors shall, so far as possible, have reliable guidance how to conduct their affairs." *Dictograph Products Co. v. Sonotone Corp.*, 230 F.2d 131, 135 (2d Cir.) (L. Hand, C.J.), *petition for cert. dismissed per stipulation*, 352 U.S. 883, 77 S. Ct. 104, 1 L.Ed.2d 82 (1956), *quoted in, In re "Agent Orange" Product Liability Litigation, supra*, 733 F.2d at 13.

We believe it appropriate to reexamine our holding of October 5, 1987 in this litigation in light of the *Furlong* case. That opinion was not noted by this Court or cited by the parties at our October 5, 1987 hearing, and since it does not cite or distinguish the *Konick* case upon which this Court relied, it was not specifically considered. Plaintiff seeks to invoke federal antitrust laws against denial of medical staff privileges. Such a claim is not

"established simply by showing that some aspects of a defendant's business have a relationship to interstate com-

merce. Rather the inquiry must be whether the defendant's activity that has been 'infected' by unlawful conduct can be shown " 'as a matter of practical economics' to have a not insubstantial effect on the interstate commerce involved." *Furlong, supra,* 710 F.2d at 926, *quoting, McLain v. Real Estate Board of New Orleans, Inc.,* 444 U.S. 232, 242, 100 S.Ct. 502, 509, 62 L.Ed.2d 441 (1980), *quoting, Hospital Building Co. v. Rex Hosp. Trustees,* 425 U.S. 738, 745, 96 S.Ct. 1848, 1852, 48 L.Ed.2d 338 (1976).

Our Court of Appeals did not endorse the view of the trial judge in *Furlong* that such a showing could never be made for a claim based on denial of medical staff privileges, but it did concede that such actions are "at the very margin of the Sherman Act's coverage." *Furlong, supra,* 710 F.2d at 927. The panel concluded "[t]hough we do not doubt that a price-fixing conspiracy or a group boycotting scheme can be shown 'as a matter of practical economics' to have an adverse effect on the perpetrator's interstate activities," a complaint must allege "facts from which it is inferable that the defendant's activities, infected with the particular illegality alleged, are likely to have a *substantial* effect on commerce." *Furlong, supra,* 710 F.2d at 927 (Emphasis added).

The *Furlong* Court acknowledged the liberal pleading requirements of *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), but concluded that "*Conley* permits a pleader to enjoy all favorable inferences from facts that have been pleaded, [but] does not permit conclusory statements to substitute for minimally sufficient factual allegations." *Furlong, supra,* 710 F.2d at 927. Subsequent cases have accepted this view that, even when monopolistic or anticompetitive activity is alleged, a complaint will be deemed insufficient unless some rational factual support for the allegations is offered. *See, Seglin v. Esau,* 769 F.2d 1274, 1280 (7th Cir.1985) (dismissing psychiatrist's complaint for failure to demonstrate "the required nexus with interstate commerce"); *and, Mamakos v. Huntington Hosp.,* 653 F.Supp. 1447, 1451 (E.D.N.Y.1987) ("Because the

'complaint boil[ed] down to the single assertion that [plaintiff's] ... suspension had an effect on defendant's interstate commerce activities ... [it was] insufficient to establish the required [jurisdictional] nexus' ", *quoting, Seglin, supra,* 769 F.2d at 1274).

The amended complaint in this action contains no facts in support of its allegations of impermissible monopolistic or anticompetitive motive by the defendants. We agree with Judge McLaughlin that the "talismanic invocation of antitrust argot does nothing to cure the amended complaint's failure to set forth facts from which a conspiracy to restrain trade or monopolize might fairly be inferred." *Mamakos, supra,* 653 F.Supp. at 1450.

This case presents an almost classic example of use of the antitrust laws to obtain relief of doubtful social or economic value, which was never contemplated by the 19th Century trustbusters who drafted these laws. New learning in the field of economic behavior has exploded myths of economic conduct upon which the twin concepts of trebled damages and legal fee shifting, so attractive to pleaders, rested. *See,* R. Posner, *Economic Analysis of Law,* at 3; R. Bork, *The Antitrust Paradox,* 225–45 (1978); R. Blair and D. Kaserman, *Law and Economics of Vertical Integration and Control,* 31–36 (1983); P. Areeda and D. Turner, *Antitrust Law,* ¶¶ 1000–109 (1980). See also, *United States v. American Cyanamid Co.,* 556 F.Supp. 361 (S.D.N.Y.1983), *aff'd in part, rev'd and remanded in part,* 719 F.2d 558 (2d Cir. 1983), *on remand,* 598 F.Supp. 1516 (S.D.N.Y.1984).

Recently, the Supreme Court has twice declined to consider possession of a significant market share indicative of an anticompetitive effect, *U.S. v. General Dynamics Corp.,* 415 U.S. 486, 94 S.Ct. 1186, 39 L.Ed.2d 530 (1974); *U.S. v. Citizens & Southern Nat'l Bank,* 422 U.S. 86, 95 S.Ct. 2099, 45 L.Ed.2d 41 (1975). Yet, the antitrust laws endure despite vigorous criticism. This Court perceives no reason to extend them to activities, such as the deliv-

ery of medical care, that their nineteenth century authors [1] surely would have considered purely local, and therefore beyond the statutory scope. *See, Marrese v. Interqual, Inc.,* 748 F.2d 373, 380 (7th Cir.1984) ("medical practice *per se* and without more is a local activity", *quoting, Williams v. St. Joseph Hosp.,* 629 F.2d 448, 454 (7th Cir.1980), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 350, 87 L.Ed.2d 632 (1985)). While federal "commerce clause" jurisdiction has expanded greatly since the passage of these laws, *McLain v. Real Estate Bd. of New Orleans,* 444 U.S. 232, 241, 100 S.Ct. 502, 508, 62 L.Ed.2d 441 (1980), the abuses of monopolies and trusts that provoked their passage, to the extent they ever existed, have substantially abated. Thus, our Courts increase the dosage of medicine after the patient is cured.

Recent cases suggest a new realization that federal antitrust litigation is often harmful. *See, e.g., Cargill, Inc. v. Monfort,* 479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986) (showing of loss or damage due to increased competition caused by proposed merger not adequate under § 16 of the Clayton Act, absent allegations of predatory pricing); *Hosp. Corp. of America v. F.T.C.,* 807 F.2d at 1381, 1386 (7th Cir.1986), ("[T]he Supreme Court, echoed by the lower courts, has said repeatedly that the economic concept of competition, rather than any desire to preserve rivals as such, is the lodestar that shall guide the contemporary application of the antitrust laws") (collecting cases); *See also, Ball Mem. Hosp. v. Mutual Hosp. Insur., Inc.,* 784 F.2d 1325 (7th Cir.1986).

Because the amended complaint in this case is insufficient to state a claim under the federal antitrust laws, it is dismissed. The pendent state claims are dismissed without prejudice.

The Clerk shall enter a final judgment. So Ordered.

---

1. The "Sherman Act", 15 U.S.C. §§ 1–7, was enacted July 2, 1890.